| | |
|---|---|
| David R. Seligman, P.C.<br>Susan D. Golden<br>**KIRKLAND & ELLIS LLP**<br>**KIRKLAND & ELLIS INTERNATIONAL LLP**<br>601 Lexington Avenue<br>New York, New York  10022<br>Telephone:     (212) 446-4800<br>Facsimile:      (212) 446-4900 | Christopher M. Hayes (*pro hac vice* pending)<br>Alexander D. McCammon (*pro hac vice* pending)<br>**KIRKLAND & ELLIS LLP**<br>**KIRKLAND & ELLIS INTERNATIONAL LLP**<br>300 North LaSalle<br>Chicago, Illinois  60654<br>Telephone:     (312) 862-2000<br>Facsimile:      (312) 862-2200 |

*Counsel to the Foreign Representative*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 15 |
| EUROPCAR MOBILITY GROUP S.A.,[1] | Case No. 20-12878 (___) |
| Debtor in a Foreign Proceeding. | |

**DECLARATION OF FRANÇOIS KOPF IN SUPPORT OF**
**VERIFIED PETITION FOR (I) RECOGNITION OF FOREIGN MAIN**
**PROCEEDING, (II) RECOGNITION OF FOREIGN REPRESENTATIVE,**
**AND (III) RELATED RELIEF UNDER CHAPTER 15 OF THE BANKRUPTCY CODE**

I, François Kopf, declare under penalty of perjury as follows to the best of my knowledge, information, and belief:

1. I am duly admitted to practice law in Paris, a partner and managing partner with the firm of Darrois Villey Maillot Brochier ("Darrois"), and counsel to Europcar Mobility Group S.A. (the "Debtor") in connection with the French Proceeding (as defined below).  I am fully familiar with insolvency proceedings established by the *Code de Commerce* (the "French Commercial Code").

---

[1] Europcar Mobility Group S.A. is the debtor in this chapter 15 case.  Europcar Mobility Group S.A. is a public limited company with registration number 489 099 903.  The location of Europcar Mobility Group S.A.'s registered office is 13 ter Boulevard Berthier, 75017 Paris, France.

2. I submit this declaration (this "Declaration") in support of the *Verified Petition for (I) Recognition of Foreign Main Proceeding, (II) Recognition of Foreign Representative, and (III) Related Relief Under Chapter 15 of the Bankruptcy Code* (the "Verified Petition")[2] filed by Luc Péligry in his capacity as the authorized foreign representative (the "Foreign Representative") of the Debtor, a publicly-traded *société anonyme* organized under the laws of the Republic of France, subject to a foreign restructuring proceeding (the "French Proceeding") before the *Tribunal de Commerce de Paris* (Commercial Court of Paris) in the Republic of France (the "French Court"). The French Proceeding was commenced by judgment of the French Court on December 14, 2020 (the "Opening Judgment"). I am personally familiar with the French Proceeding.

3. Concurrently herewith, the Foreign Representative has filed a voluntary petition for relief under chapter 15 of title 11 of the United States Code (the "Bankruptcy Code") for the Debtor. All facts set forth in this Declaration are based on: (a) my knowledge; (b) my review of relevant documents; or (c) my opinion based upon my experience and knowledge of French law and the Debtor's operations and restructuring negotiations. If I were called upon to testify, I could and would testify competently to the facts set forth herein.

**Educational and Professional Background**

4. I am admitted to the Paris Bar and a partner and managing partner at Darrois, where my broad-ranging practice focuses on special situations that require a combination of restructuring, transactional, and litigation expertise. I was born on July 4, 1973, in France. I earned a Master in Business Law / DJCE from the University of Nancy, France. I was admitted

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Verified Petition.

to the Paris Bar in 1998 and, in 2015, I joined Darrois as a partner on the restructuring team. I have participated in major French and international restructurings, including Rallye Group, CNIM, CGG, and IKKS.

## Statements of French Law and Practice

I.   **General Background of Applicable French Insolvency Law.**

5.   French insolvency law provides for several types of restructuring proceedings, including two court-assisted proceedings—the *mandat ad hoc* and conciliation proceedings—and three court-supervised proceedings—*sauvegarde* (including its expeditious versions *sauvegarde accélérée* and *sauvegarde financière accélérée*), *redressement judiciaire* (or judicial reorganization) and judicial liquidation. The *sauvegarde financière accélérée* (expedited financial safeguard proceeding), pursuant to which the Debtor filed its French Proceeding, is further described herein.

6.   The various court-supervised proceedings are public and share some key features: (a) an automatic stay prohibits creditors from commencing legal actions against a company to obtain payment of a prepetition claim, subject to few exceptions; (b) creditors are required to file proofs of claim (although some creditors are under certain circumstances exempt from such filing requirement); and (c) certain post-petition debts are given payment priority.

   A.   **Expedited Financial Safeguard Proceedings.**

7.   The purpose of expedited financial safeguard proceedings is to restructure financial debt in a very short time frame. As pre-negotiated proceedings, expedited financial safeguard proceedings are opened at the request of a debtor involved in ongoing conciliation proceedings. Conciliation proceedings are court-assisted preventive and confidential proceedings aimed at facilitating negotiations and reaching a consensual workout agreement between a company and its creditors under the supervision of a court-appointed agent. To open

expedited financial safeguard proceedings, the debtor must demonstrate to the court that the restructuring proposal prepared in the framework of conciliation proceedings is sufficiently supported by the company's financial creditors so that its approval by at least a two-thirds majority of each of two classes of creditors—one comprising the company's financial creditors[3] and another comprising bondholders—is likely to occur within the expedited deadlines imposed by the expedited financial safeguard proceedings.[4]

8.  The opening of expedited financial safeguard proceedings only has effects in relation to financial creditors and bondholders. As for trade creditors, they are in the same situation as if the debtor was not facing any insolvency proceedings.

9.  Provisions for expedited financial safeguard proceedings are made under Articles L. 628-1 *et seq.* of the French Commercial Code, it being specified that provisions for safeguard proceedings are applicable to the extent that they are consistent with expedited financial safeguard proceedings provisions. The expedited financial safeguard proceedings are recognized as insolvency proceedings under the law of the European Union. *See* Council Regulations (EC) No. 1346/2000, dated May 29, 2000, on Insolvency Proceedings (as modified) and the recasting Regulation No. 2015/848, dated May 20, 2015, on Insolvency Proceedings.

10.  Pursuant to Article R. 600-1 of the French Commercial Code, the expedited financial safeguard proceedings are opened by the court within whose area of jurisdiction the debtor's registered office is located. If the registered office is not located in France, the court

---

[3] "Financial creditors" under French law encompasses all banking institutions, financial creditors that have purchased bank debt or trade claims (such as investment or hedge funds), or creditors that have lent money to the debtor by way of a loan (including shareholders who may have granted loans to the company).

[4] Expedited safeguard proceedings can only last one month (subject to one extension by the Court for an additional month).

where the debtor has the center of its main interests in France has jurisdiction to open expedited financial safeguard proceedings.

11. Based upon the evidence presented in the debtor's petition and discussed during the opening hearing, the court decides whether the debtor is eligible for expedited financial safeguard proceedings. Expedited financial safeguard proceedings apply to debtors that are either solvent or that were insolvent for less than 45 days at the time that the petition for conciliation was filed if either they compile consolidated financial statements or their financial statements have been audited or established by a certified accountant and they reach at least one of the following thresholds: (a) the company has a minimum of 20 employees, (b) the company has a minimum annual turnover of €3 million (without value added tax), or (c) the company has a minimum total balance sheet of €1.5 million.

12. In addition, the debtor must be the subject of ongoing conciliation proceedings in which at least a two-thirds majority in value of financial creditors and bondholders are likely to approve the restructuring proposals prepared by the company and the *conciliateur*. The *jugement d'ouverture* (court opening judgment) of expedited financial safeguard proceedings is issued publicly and a notice is published in the French official legal gazette, *Bulletin Officiel des Annonces Civiles et Commerciales* (the "Legal Gazette").

13. Upon the issuance of the opening judgment, an automatic stay is imposed, prohibiting the payment of prepetition debt and preventing creditors from commencing or continuing legal actions against the debtor to obtain payment of a prepetition claim, subject to few exceptions. Given that expedited financial safeguard proceedings only affect financial creditors and bondholders, such automatic stay is limited to creditors that are members of the financial institutions' and bondholders' classes. Since expedited financial safeguard proceedings

are automatically recognized in all member states of the European Union ("E.U."), a debtor's assets in any E.U. member state are protected as well, unless the creditors have rights *in rem* over the debtor's assets located in a member state other than France, as set forth in article 8 of Council Regulations (EC) No. 2015/848, dated May 20, 2015.

14. After expedited financial safeguard proceedings are opened, a *juge-commissaire*, or insolvency judge, is appointed to oversee the proceedings. Thereafter, the assets and affairs of the debtor are subject to the supervision of the court and the *juge-commissaire*. The *juge-commissaire* must authorize any sale of the debtor's assets outside the ordinary course of business or the granting of any security interest in the debtor's assets. However, the debtor's board of directors and management, including the chairman and chief executive officer, remain in place to run the company.

15. In addition, one or more *administrateurs judiciaires* (court-appointed administrators), is appointed to assist the debtor's management (*i.e.*, the legal representative of the debtor and the court-appointed administrator need to act jointly). These court-appointed administrators are professionals with a legal or financial background who are regularly employed in this capacity. The scope of their duties is decided by the court. Generally, however, their function is to report to the court in the event there is an issue requiring the court's input. The court-appointed administrators also assist in negotiating with creditors and assist the debtor's management in drafting the safeguard plan.

16. Additionally, one or more *mandataires judiciaires* are appointed. The *mandataire judiciaire* is the creditors' representative, entitled to act in the name of and on behalf of all creditors. The *mandataire judiciaire* is also a professional with a legal or financial background

who is regularly employed in this capacity.  The *mandataire judiciaire* is tasked with, among other things, verifying the debtor's liabilities.

17.     Creditors affected by the proceedings must file a proof of their claim within two months (four months for creditors located outside of France) of the publication of the opening judgment in the Legal Gazette.  If a debtor provides the creditors' representative with sufficient information regarding the existence of a claim while no proof of claim has been filed yet, the proof of claim is deemed filed with the creditors' representative.  Creditors are allowed to confirm or amend a proof of claim filed on their behalf by the debtor, or file their own proof of claim, which then prevails.  In an expedited financial safeguard proceeding, the debtor has an additional obligation to establish a list of the claims held by the creditors who took part in the conciliation proceedings.  The claims set forth on this list are considered a filed proof of claim that may be amended by the creditors of these claims by filing an ordinary proof of claim.

18.     Thereafter, the financial creditors will be consulted through creditors' classes on the draft plan negotiated during conciliation proceedings.  In the context of expedited financial safeguard proceedings, only the class of financial institutions and the class of bondholders will be invited to vote.  These classes will approve the plan if a two-thirds majority of the creditors casting a vote within each class vote in favor of the plan.  Creditors who are members of the classes invited to vote whose claims are not affected (or which will be repaid in full upon endorsement of the plan or admission of its proven claim) will not be consulted.  The class of financial institutions must vote on the draft plan within twenty to thirty days following the transmission of the draft plan.  Such period can be reduced to eight days with the authorization of the insolvency judge.

19. Members of the classes are allowed to challenge the organization of the vote on the plan within ten days from the date of the vote of the relevant class on the plan. This challenge is ruled upon at the same hearing as the approval of the restructuring plan.

20. If the plan amends the debtor's bylaws or share capital, the shareholders will have to approve the plan by the requisite majority in an extraordinary general meeting ("EGM"). With respect to listed companies such as the Debtor, the quorum for the EGM on first convening notice will be 25% of the shareholders holding shares or voting rights, voting at a two-thirds majority of the votes cast by those present or represented; on second convening notice, the quorum will be reduced to 20% of the shareholders holding shares or voting rights. By exception, the court may hold that on first convening notice, the quorum will be increased to 50% of the shareholders holding shares or voting rights, but the majority reduced to 50% of the shareholders holding shares or voting rights. In practice, the shareholders have a veto right, like any of the creditor classes.

21. After a proposed restructuring plan is approved by creditors, the plan is submitted to the French court which verifies that the plan preserves the interests of all affected creditors. The French court will hear from the debtor, the judicial administrator(s), the creditors' representative, the representatives of the debtor's employees, and the public prosecutor before rendering its ruling. If the French court concludes that a plan meets the relevant legal requirements, it will approve the plan, which then becomes binding upon all affected creditors. The approval ruling may be appealed either by the parties to the plan or by third parties within ten days of the notification or publication of the decision. If any of the classes refuse to approve the plan, the court will close the proceedings. If, as a result of such closure, the company becomes insolvent, it will have no other choice than to file for reorganization or liquidation.

### B.     The French Proceeding.

22.    By order dated November 19, 2020, the President of the Paris Commercial Court opened the conciliation proceeding for the benefit of the Debtor, appointing Maître Hélène Bourbouloux as conciliator for a period of four months in order to provide a suitable framework in the discussions between the Debtor, its existing lenders, and potential investors.

23.    In the context of the conciliation proceeding and under the aegis of the conciliator, the Debtor and a group comprised of a large portion of its direct lenders agreed on the principles of a new money financing and a restructuring of the Debtor's financial debt.

24.    Following this agreement in principle, the Debtor filed a *demande d'ouverture de procédure de sauvegarde financière accélérée* on December 9, 2020, with the French Court. An opening hearing was held on December 14, 2020.

25.    The French Court was deemed to have jurisdiction over the Debtor's French Proceeding because the Debtor's registered office is located in Paris and the Debtor is registered with the Paris Commercial Court's *Registre du Commerce et des Sociétés* (Registry of Trade and Companies).

26.    By oral ruling of the French Court on December 14, 2020, the French Court opened the French Proceeding and acknowledged that Luc Péligry, as the foreign representative of the Debtor, would file this chapter 15 case, with a written judgment to follow (the "Opening Judgment"). The Opening Judgment became effective when issued orally by the French Court. The Debtor continues to operate in the ordinary course of business under the protection of an automatic stay against financial creditors' actions during the French Proceeding, as discussed above.

27.    As set forth in the Opening Judgment, the French Court also appointed (a) Mr. Alain Fargeaud as the *juge-commissaire* (day-to-day judge) of the Debtor; (b) SELARL

9

FHB, represented by *Maître* Hélène Bourbouloux, as the *administrateur judiciaire* (*i.e.*, the court-appointed administrator); and (c) SELAFA MJA, acting through *Maître* Lucile Jouve, as *mandataire judiciaire* (*i.e.*, the creditors' representative).

## II.    The French Proceeding is a Foreign Main Proceeding.

28. To the best of my information and belief, the French Proceeding is a collective judicial proceeding under French law relating to the adjustment of debt of the Debtor in which the purpose is a corporate restructuring. The French Proceeding allows for participation by all affected creditors of the Debtor. The French Proceeding only affects the Debtor's financial creditors and bondholders, each of whom are entitled to vote as classes on the Debtor's plan of reorganization. Accordingly, the French Proceeding considers the rights and obligations of all of the Debtor's creditors rather than a single creditor.

29. To the best of my information and belief, the French Proceeding is judicial in character. Pursuant to the French Commercial Code, the French Court has the exclusive jurisdiction over the French Proceeding. Additionally, the *administrateur judiciaire* is appointed by the French Court.

30. To the best of my information and belief, the French Proceeding subjects the Debtor's assets and affairs to the supervision of the French Court for the duration of the French Proceeding. As an example, the *juge-commissaire* must authorize any sale of the Debtor's assets outside the ordinary course of business, or the granting of any security interest in the Debtor's assets. This includes payment, by exception, of debt incurred prior to commencement of the French Proceeding. Additionally, as mentioned above, the French Court must also approve any settlement agreement (including any reorganization of the Debtor's assets and affairs regulated under the settlement agreement) for such settlement agreement to take effect. The French Court also oversees the French Proceeding by appointing administrators to assist in the Debtor's

negotiations with creditors and with the drafting of the restructuring plan, and appointing the *mandataire judiciaire* to verify the Debtor's liabilities.

31. The French Proceeding is a "foreign proceeding" within the meaning of section 101(23) of the Bankruptcy Code, and the Debtor's "center of main interests," as the term is used in section 1502(4) of the Bankruptcy Code, is located in France. To the best of my information and belief, and as identified in the *Declaration of Foreign Representative Pursuant to 11 U.S.C. § 1515 and Rule 1007(a)(4) of the Federal Rules of Bankruptcy Procedure and in Support of Verified Petition for (I) Recognition of Foreign Main Proceeding, (II) Recognition of Foreign Representative, and (III) Related Under Chapter 15 of the Bankruptcy Code*, filed contemporaneously herewith, the French Proceeding is the only proceeding related to the adjustment of debts pending for the Debtor that is both (a) a "foreign proceeding" and (b) pending in the country of the Debtor's center of main interests; therefore, the French Proceeding is the only proceeding that qualifies for recognition as a foreign main proceeding.

[*Remainder of page intentionally left blank.*]

11

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing statements are true and correct to the best of my information and belief.

Executed on this 17th day of December, 2020
Paris, France

*/s/ François Kopf*
François Kopf
Partner and Managing Partner
Darrois Villey Maillot Brochier